UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY AZZO,<br><br>                                    Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>                                    Respondents. | Case No.:  3:25-cv-03122-RBM-BJW<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Docs. 1, 3]** |

Pending before the Court are Petitioner Johnny Azzo's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") (Doc. 1) pursuant to 28 U.S.C. § 2241 and Motion and Memorandum of Law in Support of Temporary Restraining Order ("TRO Motion") (Doc. 3).  The Petition and TRO Motion seek the same relief: Petitioner's release from detention and an order enjoining Respondents from removing Petitioner to a third country unless they provide him with written notice and a meaningful opportunity to raise fear-based claims. (Doc. 1 at 23–24; Doc. 3 at 2.) [1]  For the reasons set forth below, the Petition is **<u>GRANTED</u>**.

---

[1]  The Court cites the CM/ECF electronic pagination unless otherwise noted.

# I.    BACKGROUND

## A.    Factual Background

Petitioner was born and raised in Lebanon.  (Doc. 1 at 27 [Declaration of Johnny Azzo ("Azzo Decl.")] ¶ 1.)  He entered the United States in 1985, "overstayed his visa, and was later convicted of federal controlled substance offenses and sentenced to 60 months in prison."  (*Id.*; Doc. 8-5 [Declaration of Hugo Lara Ramirez ("Ramirez Decl."] ¶ 4.)  On August 3, 2004, an immigration judge ordered Petitioner removed to Lebanon but granted him deferral of removal under the Convention Against Torture ("CAT").  (Ramirez Decl. ¶ 5; Azzo Decl. ¶ 2.)  Following Petitioner's federal criminal incarceration, he was transferred to immigration custody on May 1, 2007.  (Ramirez Decl. ¶ 6.)  About six and a half months later, on November 20, 2007, Immigration and Customs Enforcement ("ICE") "released Petitioner on an Order of Supervision because it was unable to execute his removal order."  (*Id.* ¶ 7; Doc. 1 at 5 (citing *id.*, Ex. C at 36–38).)  Since being released, Petitioner has checked in with ICE every year as required.  (Azzo Decl. ¶ 4.)

On October 21, 2025,[2] ICE arrested Petitioner at his required check-in appointment.  (*Id.* ¶ 5.)  At the time, Petitioner was told that he "was being detained, that [ICE was] going to try to deport [him] to a third country, and that [ICE was] going to review [his] case."  (*Id.*)  That day, Petitioner also received a Notice of Revocation of Release, which stated:

> This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case.  ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future.  ICE has determined that you can be removed from the United States pursuant to the outstanding order of removal against you. . . . ICE has determined it is appropriate to enforce the removal order and remove you to a third country.

---

[2] Although there initially was a dispute regarding the date of Petitioner's arrest, Petitioner now "agrees with the government he was re-detained on October 21.  The incorrect date [in the Petition] appears to have been a typographical error from counsel that both [Petitioner] and counsel missed."  (Doc. 9 at 3 n.1.)

2

(Doc. 1 at 5; Doc. 8-2 at 1.)

"On November 6, 2025, [ICE Enforcement and Removal Operations ("ERO")] contacted a Detention and Deportation Officer (DDO) at ERO Headquarters assigned to Middle East and Europe region concerning third country removal in this case." (Ramirez Decl. ¶ 10.)  As of November 21, 2025, "ERO Headquarters is still in the process of identifying third countries that may be willing to accept Petitioner for removal." (*Id.*)  On November 20, 2025, ICE interviewed Petitioner, and Petitioner made the following statement: "I am not going to any other country.  I was granted withholding of removal to my country Lebanon." (*Id.* ¶ 11 (quoting Doc. 8-4 at 1).)  "ICE continues to diligently seek to identify a third country for Petitioner's removal and believes there is a significant likelihood of removal to a third country in the reasonably foreseeable future." (Ramirez Decl. ¶ 13.)  "Once a third country is identified, ICE will provide Petitioner with written notice, and if Petitioner claims a fear of removal to the identified country, he will be referred to an asylum officer for processing of the fear-based claims." (*Id.* ¶ 14.)

## B.    Procedural Background

On November 12, 2025, Petitioner filed the Petition against Kristi Noem, Pamela Bondi, Todd Lyons, Jesus Rocha, and Christopher LaRose (collectively, "Respondents"). (Doc. 1.)  The same day, Petitioner filed a Motion for Appointment of Counsel (Doc. 2) and the TRO Motion (Doc. 3).  On November 14, 2025, the Court granted the Motion for Appointment of Counsel and ordered Respondents to show cause why the Petition and accompanying TRO Motion should not be granted by filing a written response. (Doc. 4 at 2–4.)  On November 21, 2025, Respondents filed their Response in Opposition to Petitioner's Habeas Petition and Application for Temporary Restraining Order ("Response"). (Doc. 8.)  On November 24, 2025, Petitioner filed his Traverse in Support of Petition for Writ of Habeas Corpus and Reply in Support of Motion for Temporary Restraining Order ("Reply"). (Doc. 9.)

/ / /

/ / /

## II.    <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.    <u>DISCUSSION</u>

Petitioner argues that his detention unlawfully violates the regulations in 8 C.F.R. § 241.4(l) and § 241.13(i) and the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 3–4, 10–17.) Petitioner also argues that due process and CAT prohibit ICE from removing him to a third country "without providing an opportunity to assert fear of persecution or torture before an immigration judge." (*Id.* at 4, 19–23.)

Respondents argue that: (1) ICE "may remove Petitioner to a third country that will accept Petitioner's removal" because removal to other countries is "impracticable, inadvisable, or impossible;" (2) detention is proper under *Zadvydas* because there is now a significant likelihood of removal to a third country in the reasonably foreseeable future; (3) ICE complied with the requirements of § 241.4(l) and § 241.13(i), but even if it did not Petitioner has not established prejudice; and (4) ICE will provide Petitioner written notice and refer him "to an asylum officer for processing of . . . fear-based claims" rather than immediately deport him to a third country. (Doc. 8 at 2–8.)

The Court finds Respondents: (1) have not met their burden under *Zadvydas*; (2) violated the regulations in §§ 241.4(l) and 241.13(i); and (3) must provide Petitioner with adequate notice and an opportunity to be heard before removing him to a third country.

/ / /

4

1

**A.    *Zadvydas***

2

The Supreme Court has recognized a six-month presumptively reasonable period of

3

detention after a noncitizen's removal order becomes final.  *Zadvydas*, 533 U.S. at 701.

4

"After this 6-month period, once the alien provides good reason to believe that there is no

5

significant likelihood of removal in the reasonably foreseeable future, the Government

6

must respond with evidence sufficient to rebut that showing."  *Id.*

7

**1.    Presumption of Reasonableness**

8

The six-month presumptively reasonable period has passed for Petitioner.  Courts in

9

the Ninth Circuit, and most courts across the country, calculate detention "cumulatively

10

based on all post-removal order detentions to determine whether *Zadvydas's* presumption

11

of reasonableness is exceeded."  *Phan v. Warden of Otay Mesa Det. Facility*, Case No.:

12

25-cv-02369-AJB-BLM, 2025 WL 3141205, at *3 (S.D. Cal. Nov. 10, 2025) (collecting

13

cases).  Considering Petitioner was detained for about six months in 2007 (*see* Ramirez

14

Decl. ¶¶ 6–7) and one month (and counting) in 2025 (*see* Azzo Decl. ¶ 5), the Court finds

15

Petitioner's current detention is no longer presumptively reasonable.

16

**2.    Good Reason to Believe**

17

After the six-month period expires, Petitioner has the initial burden of showing

18

"good reason to believe that there is no significant likelihood of removal in the reasonably

19

foreseeable future."  *Zadvydas*, 533 U.S. at 701.  "Good reason to believe does not place a

20

burden upon the detainee to demonstrate no reasonably foreseeable, significant likelihood

21

of removal or show that his detention is indefinite; it is something less than that."  *Senor v.*

22

*Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (cleaned up).  However, Petitioner must

23

offer more than "conclusory statements suggesting that he will not" be removed.  *Andrade*

24

*v. Gonzalez*, 459 F.3d 538, 543 (5th Cir. 2006); *Quassani v. Killian*, Case No. 2:17-cv-

25

01678-APG-PAL, 2017 WL 3396506, at *2 (D. Nev. Aug. 4, 2017) ("question[ing]

26

whether petitioner can meet his initial burden" given that he "has offered nothing more

27

than conclusory statements with respect to the likelihood of his removal in the foreseeable

28

future").  Here, Petitioner has met his burden to show "good reason to believe."  He notes

that ICE has been unable to deport him over the last twenty years and that ICE has "yet to even *identify* a third country to deport him to." (Doc. 1 at 18 (emphasis in original).) The burden thus shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

### 3.    Significant Likelihood of Removal in the Reasonably Foreseeable Future

Respondents argue that they have sufficiently rebutted Petitioner's showing. (Doc. 8 at 4–5.) They note that: (1) "recent developments in international relations between the United States and several other countries have made probable ICE's removal of immigrants . . . that it previously was unable to remove to third countries;" (2) "ICE has worked diligently to coordinate [Petitioner's] removal" and, despite still being "in the process of identifying countries that may be willing to accept Petitioner for removal, . . . believes there is a significant likelihood of removal to a third country in the reasonably foreseeable future;" and (3) "[e]vidence of progress, even slow progress, in negotiating a petitioner's repatriation will satisfy *Zadvydas* unless the petitioner's detention grows unreasonably lengthy." (*Id.*) The Court disagrees.

*Kamyab v. Bondi* is instructive. Case No. C25-389RSL, 2025 WL 2917522 (W.D. Wash. Oct. 14, 2025). There, the petitioner was born in Iran and ordered removed after sustaining a criminal conviction. *Id.* at *1. Because the travel document request to Iran had been pending for over six months "and could remain pending for quite some time," the Government also submitted "third-country removal requests to Costa Rica, Panama, and El Salvador." *Id.* at 3. Several months later, those requests to the third countries were still unanswered. *Id.* In granting the petition for writ of habeas corpus, the court reasoned:

> At most, the Government's arguments and declarations here show there is at least some possibility that [the target country] will accept [the petitioner] at some point. . . . That is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future. . . . Courts in this circuit have regularly refused to find [the Government's] burden met where [the Government has] offered little more than generalizations regarding the likelihood that removal will occur. *See, e.g.*, *Singh v. Gonzalez*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006); *Chun Yat Ma v. Asher*, [No. C11-1797

6

3:25-cv-03122-RBM-BJW

MJP], 2012 WL 1432229, at *4–5 [(W.D. Wash. Apr. 25, 2012)].

> For example, in *Singh v. Gonzalez*, the court found that ICE had not met its burden where it 'merely assert[ed] that it has followed up on its request for travel documents' but could not provide any substantive indication regarding how or when it expect[ed] to obtain the necessary travel document . . . .' 448 F. Supp. 2d at 1220. And in *Chun Yat Ma v. Asher*, the court considered an affidavit from an ICE official that included a statement that an individual's travel document would 'likely' be issued soon. 2012 WL 1432229, at *4. Yet, the court noted, a deportation officer could not give any 'indication of when the issuance may occur.'

*Kamyab*, 2025 WL 2917522, at *4.

In addition, courts have held that respondents failed to meet their burden on facts even more favorable to them than those present here. For example, in *Phan v. Warden of Otay Mesa Detention Facility*, the respondents argued that they had rebutted the petitioner's showing because they had prepared a travel document request, translated it completely, and submitted it to ICE headquarters. 2025 WL 3141205, at *5. But the court found the respondents failed to "proffer a substantive rebuttal" because the respondents "concede[d] that the travel document request ha[d] yet to be submitted to Vietnam, provide[d] no estimate for when it [would] be submitted, and provide[d] no estimate for how long it [would] take for Vietnam to respond." *Id.*; *see also Lopez-Cacerez v. McAleenan*, Case No. 19-cv-1952-AJB-AGS, 2020 WL 3058096, at *6 (S.D. Cal. June 9, 2020) (holding that "[g]eneral indications that U.S. agencies have been in discussions with [the target country] regarding repatriation efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful") (citation omitted); *Gilali v. Warden of McHenry Cnty. Jail*, Case No. 19-CV-837, 2019 WL 5191251, at *5 (E.D. Wis. Oct. 15, 2019) (holding that although the "respondent asserts that [the petitioner's] travel document requests . . . remain pending and ERO continues to follow up on the documents' status, [] this is insufficient. It is merely an assertion of good-faith efforts to secure removal; it does not make removal likely in the reasonably foreseeable future.").

1    Here, Respondents "contacted a Detention and Deportation Officer (DDO) at ERO

2    Headquarters assigned to Middle East and Europe region concerning third country removal

3    in this case." (Ramirez Decl. ¶ 10.) ICE and ERO Headquarters are "still in the process

4    of identifying third countries that may be willing to accept Petitioner for removal." (*Id.*)

5    "ICE continues to diligently seek to identify a third country for Petitioner's removal and

6    believes there is a significant likelihood of removal to a third country in the reasonably

7    foreseeable future." (*Id.* ¶ 13.) This is an even weaker evidentiary showing than in *Kamyab*

8    or *Phan*.[3]   Respondents have not even identified a third country to which they plan to

9    remove Petitioner, much less submitted a travel document or provided an estimate for how

10   long it would take this unidentified third country to respond. Because Respondents have

11   "offered little more than generalizations regarding the likelihood that removal will occur,"

12   *Kamyab*, 2025 WL 2917522, at *4, the Court finds that they have not met their burden to

13   "respond with evidence sufficient to rebut" Petitioner's showing. *Zadvydas*, 533 U.S. at

14   701.

15   **B.    Agency Regulations**

16   Petitioner also challenges his detention as unlawful based on ICE's decision to

17

18   _____

19   [3]  The evidentiary showing here is also weaker than in the cases cited by Respondents in

20   their Response. (*See* Doc. 8 at 5 (citing *Marquez v. Wolf*, Case No.: 20-cv-1769-WQH-
     BLM, 2020 WL 6044080 (S.D. Cal. Oct. 13, 2020); *Sereke v. DHS*, 3:19-cv-01250-WQH-

21   AGS (S.D. Cal. Aug. 15, 2019), ECF No. 5).) In *Marquez*, the respondents "set forth
     evidence that demonstrates progress and the reasons for the delay in [the petitioner's]

22   removal." 2020 WL 6044080, at *3. Specifically, they had obtained travel documents for
     the petitioner and were ensuring the petitioner was medically cleared to board his flight to

23   Peru. *Id.* In *Sereke*, the "ERO San Diego field office submitted a travel document (TD)

24   packet to the Embassy of Eritrea," "confirmed that [the petitioner's] travel document (TD)
     is in process for renewal," and "prepare[d] an itinerary for [the petitioner's] removal from

25   the United States via commercial airline." 3:19-cv-01250-WQH-AGS, ECF No. 5 at *4.
     These cases may support the proposition that the government need not "prearrange a

26   noncitizen's removal or have a travel document in hand before detaining them" (Doc. 8 at

27   5), but they do not support Respondents' position that mere generalizations, divorced from
     any documentary support, suffice for *Zadvydas* purposes.

28

8

revoke his release without providing the required prompt interview. (Doc. 1 at 2, 10–14; Doc. 9 at 4–9.) Respondents argue that Petitioner's interview, which occurred a month after Petitioner was detained, was prompt because the delay was "necessary to afford [Petitioner] a meaningful opportunity to prepare [his] challenge to the revocation." (Doc. 8 at 6–7.)[4]

The detention and release of noncitizens who are subject to a final order of removal are governed by 8 U.S.C. § 1231. Under that statute, "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days," also known as the "removal period." 8 U.S.C § 1231(a)(1)(A). "If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). Those regulations, which govern release and revocation of release of noncitizens subject to a final order of removal, are 8 C.F.R. § 241.4 and § 241.13. Under both regulations, "[u]pon revocation," the noncitizen "will be notified of the reasons for revocation of his or her release or parole" and will be given "an initial informal interview promptly after his or her return to Service custody" to "respond to the reasons for revocation stated in the notification." § 241.4(l)(1); § 241.13(i)(3).

Petitioner was taken into ICE custody on October 21, 2025. (Touch Decl. ¶ 5; Doc. 8-3 at 2.) Despite the requirement that Petitioner be afforded "an initial informal interview promptly after his or her return to Service custody," he was not interviewed until November 20, 2025. (Doc. 8 at 7.) That month-long delay violated the promptness requirement. *See M.S.L. v. Bostock*, Civ. No. 6:25-cv-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (granting petition because an informal interview given 27 days after petitioner was taken into ICE custody "cannot reasonably be construed as . . .

---

[4]  In light of the Court's finding that Respondents violated agency regulations by not providing a prompt interview, the Court declines to reach the Parties' arguments regarding whether Petitioner received sufficient notice of the reasons for revocation of his release.

prompt"); *Sayvongsa v. Noem*, Case No.: 3:25-cv-02867-AGS-DEB (S.D. Cal. Oct. 31, 2025), ECF No. 10 (granting petition where petitioner did not receive informal interview for three weeks after being re-detained).[5]  Thus, ICE violated its own regulations by failing to provide a prompt interview.

Respondents argue that even assuming ICE violated agency regulations, Petitioner "has not established prejudice nor a constitutional violation."  (Doc. 8 at 7 (citing *Brown v. Holder*, 763 F. 3d 1141, 1148–50 (9th Cir. 2014) ("[T]he mere failure of an agency to follow its regulations is not a violation of due process."); *United States v. Tatoyan*, 474 F.3d 1174, 1178 (9th Cir. 2007) ("Compliance with . . . internal [customs] agency regulations is not mandated by the Constitution.").)

"[T]here are, for present purposes, two types of regulations: (1) those that protect fundamental due process rights, and (2) [] those that do not."  *United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020).  "A violation of the first type of regulation . . . implicates due process concerns even without a prejudice inquiry."  *Id.* (holding that where "the regulation violation . . . constituted a denial of [the defendant's] right to notice and an opportunity to respond, no showing of prejudice [was] necessary to establish a due process violation").  "There can be little argument that ICE's requirement that noncitizens be afforded an informal interview . . . derives from the fundamental constitutional guarantee of due process."  *Ceesay v. Kurzdofer*, 781 F. Supp. 3d 137, 165 n.26 (W.D.N.Y. 2025).  Accordingly, Respondents' violation "implicates due process concerns even without a prejudice inquiry."  *Raya-Vaca*, 771 F.3d at 1205.

But even if that were not the case, Petitioner suffered sufficient prejudice.  In the immigration context, "violation of a regulation does not invalidate a deportation

---

[5]  *See Sayvongsa*, Case No.: 3:25-cv-02867-AGS-DEB, ECF No. 8-1 [Declaration of Deportation Officer Jason Cole] ¶¶ 8, 11 (noting the petitioner was detained on October 7, 2025 and interviewed on October 28, 2025).

proceeding unless the regulation serves a purpose of benefit to the [noncitizen]," *i.e.*, the violation "prejudiced interests of the [noncitizen] which were protected by the regulation." *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979). ICE's failure to comply with the requirements of § 241.4 and § 241.13 "prejudiced interests of [Petitioner] which were protected by the regulation[s]." *Id.* Both § 241.4 and § 241.13 were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). ICE deprived Petitioner of these due process protections when it failed to provide him with a prompt interview to respond to the reasons for revocation of his release. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Hernandez v. Sessions*, 872 F.3d 976, 995, 1000 (9th Cir. 2017) (holding that "[u]nlawful detention" by immigration officials constituted "irreparable harm"). Therefore, Petitioner was prejudiced by ICE's failure to comply with its own regulations.

Government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Confederated Tribes & Bands of Yakima Indian Nation v. F.E.R.C.*, 746 F.2d 466, 474 (9th Cir. 1984) ("It is a well-known maxim that agencies must comply with their own regulations.") The great weight of district courts have "determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz v. LaRose*, — F. Supp. 3d —, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025); *see, e.g.*, *K.E.O. v. Woosley*, Civil Action No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *7 (W.D. Ky. Sept. 4, 2025) (noting "courts across the country have ordered the release of individuals" in ICE custody where ICE "violated their own regulations"); *Grigorian v. Bondi*, CASE NO. 25-cv-22914-RAR, 2025 WL 2604573, at *10 (S.D. Fla. Sept. 9, 2025) ("The failure to provide [the petitioner] with an informal interview promptly after his

detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates both ICE's own regulations and the Fifth Amendment Due Process Clause. This compels [the petitioner's] release."). This Court reaches the same conclusion; Respondents' violation of agency regulations constitutes separate grounds for granting the Petition.

## C.    Third Country Removal

Lastly, Petitioner claims that "ICE's policies threaten [his] unexpected, but potentially immediate and abrupt, removal to another unidentified third country without adequate notice and an opportunity to be heard," in violation of the Fifth Amendment and CAT. (Doc. 1 at 19.) Respondents claim that Petitioner's concern "is not borne out by the evidence in this case" because ICE attests that it "will provide Petitioner with written notice, and if Petitioner claims a fear of removal to the identified country, he will be referred to an asylum officer for processing of the fear-based claims." (Doc. 8 at 7–8.) Because Respondents actively seek to remove Petitioner to a third country (*see generally* Ramirez Decl.; Doc. 8), the Court disagrees with Respondents. *See G.A.A. v. Chestnut*, Case No. 1:25-cv-01102-EPG-HC, 2025 WL 3251316, at *7 (E.D. Cal. Nov. 21, 2025) ("Despite [the respondents'] assurances that . . . ICE fully understands that prior to removal to [a third country, the petitioner] must be provided notice, an opportunity to claim fear, and, if a fear is claimed, an opportunity to have that claim adjudicated," there is still "a sufficiently imminent risk that Petitioner will be subjected to improper process in relation to any third country removal").

Petitioner attaches as an exhibit the July 9, 2025 memo from ICE Director Todd Lyons ("ICE Memo") titled "Third Country Removals Following the Supreme Court's Order in *Department of Homeland Security v. D.V.D.*, No. 24A1153 (U.S. June 23, 2025)." (Doc. 1 at 40.) The ICE Memo reads:

> If the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed without the need

for further procedures. ICE will seek written confirmation from the Department of State that such diplomatic assurances were received and determined to be credible. . . .  In all other cases, ICE must comply with the following procedures:

- An ERO officer will serve on the alien the attached Notice of Removal.  The notice includes the intended country of removal and will be read to the alien in a language he or she understands.

- ERO will <u>not</u> affirmatively ask whether the alien is afraid of being removed to the country of removal.

- ERO will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal. In exigent circumstances, ERO may execute a removal order six (6) or more hours after service of the Notice of Removal as long as the alien is provided reasonable means and opportunity to speak with an attorney prior to removal.

- Any determination to execute a removal order under exigent circumstances less than 24 hours following service of the Notice of Removal must be approved by the DHS General Counsel, or the Principal Legal Advisor where the DHS General Counsel is not available.

- If the alien <u>does not</u> affirmatively state a fear of persecution or torture if removed to the country of removal listed on the Notice of Removal within 24 hours, ERO may proceed with removal to the country identified on the notice. ERO should check all systems for motions as close in time as possible to removal.

- If the alien <u>does affirmatively state</u> a fear if removed to the country of removal listed on the Notice of Removal, ERO will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection under section 241(b)(3) of the INA and the Convention Against Torture (CAT).  USCIS will generally screen the [noncitizen] within 24 hours of referral.

(Doc. 1 at 40–41 (emphasis in original).)

As several courts have held, the policies in the ICE memo are "contrary to Ninth Circuit precedent." *Vu v. Noem*, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341,

13

at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases). A "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Nguyen v. Scott*, — F. Supp. 3d —, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)). "Both the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims." *Nguyen*, 2025 WL 2419288, at *18 (quoting *Aden*, 409 F. Supp. 3d at 1009). "Failing to notify individuals who are subject to deportation that they have the right to apply . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

The court in *Esmail v. Noem* analyzed how the policies in the ICE Memo "present due process issues." Case No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *6–7 (C.D. Cal. Sept. 26, 2025). First, when the third country "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured . . . the alien may be removed *without the need for further procedures*." *Id.* at *7 (emphasis in original). Because "the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims, this approach is insufficient." *Id.* (cleaned up). Second, when the third country has not provided such assurances, ICE "will not affirmatively ask whether the alien is afraid of being removed to that country." *Id.* This "forces the noncitizen to assert a right he may not know that he has," which "'violates both INS regulations and the constitutional rights to due process.'" *Id.* (cleaned up) (quoting *Andriasian*, 180 F. 3d at 1041). This Court finds the reasoning and conclusion in *Esmail* persuasive and adopts them here. *Accord Nguyen*, 2025 WL 2419288, at *18 (granting preliminary injunction because the petitioner was "likely to succeed on his claim that removal to a third country under ICE's current policy, without meaningful notice and reopening of his removal proceedings for a

hearing, would violate due process"); *Nadari v. Bondi*, 2:25-cv-07893-JLS-BFM (C.D. Cal. Sept. 3, 2025), ECF No. 9, at *5–6 (same).

Accordingly, because Respondents failed to provide evidence sufficient to rebut Petitioner's showing under *Zadvydas*, violated the prompt interview requirement in 8 C.F.R. § 241.4 and § 241.13, and must provide Petitioner with adequate notice and an opportunity to be heard before removing him to a third country, the Petition is **GRANTED**.

## IV.    CONCLUSION

For the foregoing reasons, the Petition (Doc. 1) is **GRANTED**.  Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to his preexisting Order of Supervision.

2. Respondents and their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are **PROHIBITED** from removing Petitioner to a third country without notice and a meaningful opportunity to be heard, following the process laid out in *D.V.D. v. United States Dep't of Homeland Sec.*, Civil Action No. 25-10676-BEM, 2025 WL 1453640 (D. Mass. May 21, 2025).[6]

3. The TRO Motion (Doc. 3) is **DENIED AS MOOT**.

   **IT IS SO ORDERED**.

DATE:  December 10, 2025

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[6] This relief has been granted in similar matters. *See Louangmilith v. Noem*, Case No.: 25-cv-2502-JES-MSB, 2025 WL 2881578, at *4 (S.D. Cal. Oct. 9, 2025); *Y.T.D. v. Andrews*, Case No. 1:25-CV-01100 JLT SKO, 2025 WL 2675760, at *13 (E.D. Cal. Sept. 18, 2025); *Kumar v. Wamsley*, CASE NO. C25-2055-KKE, 2025 WL 3204724, at *9 (W.D. Wash. Nov. 17, 2025).